ROCKFORD, ROCK ISLAND AND ST. LOUIS RAILROAD CO.

*v.*

JOHN ROSE.

1. SETTLEMENT—*what constitutes.* Where the parties to a contract met, at night, and one of them handed the other, through a car window, a receipt, and requested him to sign it, which he did, and thereupon the one taking the receipt handed the one signing it a package of money containing a certain amount, and told him that was all he could pay, to which the one receiving the money replied that he was not satisfied with the amount and would bring suit the next day, it was *held,* that there was no such final settlement made as would bar all further investigation into the state of the accounts between the parties.

2. NEW TRIAL—*on ground of surprise.* Where a party has within his own power evidence to contradict testimony which is claimed to have been a surprise, and fails to produce that evidence, or show some sufficient reason for not doing so, the failure must be attributed to his own neglect, and a new trial will not be granted on the ground of surprise.

3. Where a bill of particulars is filed by the plaintiff, the defendant can not be heard to say that he is surprised that evidence was offered to sustain anything embraced in such bill, even though on a former trial of the cause no such evidence was offered.

APPEAL from the Circuit Court of McDonough county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding.

The Rockford, Rock Island and St. Louis Railroad Company made a contract with one L. E. Saulpaugh to do the grading of its road from Monmouth to Bushnell. Saulpaugh sub-let a portion of the grading to Hawes & Brewster. and Hawes & Brewster sub-let a portion of their work to John Rose, who commenced work under his contract. When pay-day came, Hawes & Brewster ran away without paying their hands. Rose went to the chief engineer of the company. and told him that he would have to quit work, as he was owing his hands for work done under his contract with Hawes & Brewster, and could not pay them, and that Hawes & Brewster were owing him about $500. The engineer then said to him that, if he would go on and finish the job he had contracted with Hawes & Brewster to do, the company would pay him 21 cents per cubic yard for what remained unfinished. that being the amount the company was to pay L. E. Saulpaugh, and that they would let him have money to pay his hands, to keep them at work, and thereupon paid him $500. Rose then went on and finished the work that remained unfinished under the Hawes & Brewster contract. Afterwards, the engineer agreed with Rose to pay him 21 cents per cubic yard for finishing certain other grading commenced by Hawes & Brewster under their contract with Saulpaugh, but which was not included in the contract between Hawes & Brewster and Rose. Rose agreed to, and did do this work, and also removed some hay from the line, and dug a foundation for a bridge, under the direction of the engineer, and upon his promise that the company would pay him.

This suit was brought by Rose to recover a balance claimed to be due from the company to him under these contracts with the engineer. The plaintiff recovered below, and the defendant appealed.

Mr. J. S. Bailey, and Mr. C. W. Osborn, for the appellant.

Mr. C. F. Wheat, and Mr. D. G. Tunnicliff, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

This action was brought to recover the balance due for grading done in the construction of appellant's road. Whether anything was due appellee, depends upon what the contract between him and the company was, and the construction that shall be given to it. The testimony is flatly contradictory, but we are of opinion the weight of the evidence is with appellee. The jury were warranted in finding the work done was not to be measured under the "Saulpaugh contract," and when that fact was found, little else remained but to make the assessment of appellee's damages.

Appellee claimed for finishing work, originally included in his contract with Hawes & Brewster, mainly on the McKindly farm; for excavating the cuts on the north and south ends, and for some other work of no very great importance.

If the jury allowed for all this work, and there was evidence that would justify them in doing it, then, after deducting all payments, the verdict, as found, was authorized by the testimony. Had the $500 in dispute been deducted, even then the judgment, as rendered, after the *remittitur*, would not be excessive.

The engineers that measured the work for the company allowed but a small portion of the work done on the cuts, for the reason that, under the "Saulpaugh contract," if the "haul," as they designate it, was less than 1400 feet to a "fill," nothing was to be estimated. Whatever may have been the true rule for estimating the grading, if it had been done by Saulpaugh, under his contract with the company, it certainly can not be maintained the same rule is to be adopted in measuring the work done by appellee on these cuts. There is no satisfactory evidence appellee knew how the grading under the "Saulpaugh contract" was to be measured; but there is a still stronger reason why this could not have been the understanding between the parties. The contract to do

the grading on the cuts was not made until the work appellee was to do under the original contract with Hawes & Brewster, which had been assumed by the company, was nearly finished. There were then no fills in which the dirt could be used, and the largest portion, necessarily, had to be wasted.

The construction contended for would involve the absurdity of appellee agreeing to do this very considerable work for the trifling sum the company's engineers might be willing to allow upon the estimates for waste. We are unwilling to adopt an interpretation of the agreement between the parties that will do such rank injustice.

There is no warrant in the evidence for saying there had been a full and final settlement of the matters in controversy. What is claimed as a final settlement took place at Bushnell. The chief engineer, Sweet, telegraphed appellee to meet him there. It was at night when the parties met. The engineer handed appellee a receipt through the car window, and told him he wanted him to sign it, which he did. He then gave appellee a package of money, containing $1232.09, and told him that was all he could pay. Appellee replied he was not satisfied with the amount, but would sue the company the next day. It would be absurd to call this a final settlement, understandingly made, in that sense that would bar all further investigation into the state of the accounts between the parties.

The affidavit filed does not aid appellant's motion for a new trial.

The principal ground of surprise is, that appellee testified the credit of $500 was in payment for the 4200 cubic yards grading done, under the contract with Hawes & Brewster, before they abandoned the work. It is alleged, in the affidavit, that, on a trial previously had before a justice of the peace, appellee made no claim that the $500 paid him was to be applied upon the grading done as a sub-contractor under Hawes & Brewster. It is a complete answer to the position assumed, that the affidavit itself shows the company had in-

its possession a receipt which, it is alleged, proves the pay-
ment was made as an advance, and not for past services, and
no reason whatever is given why it was not produced.   The
company had within its power, by its own showing, the evi-
dence to contradict the testimony of appellee which it is now
urged was a surprise.   If it failed to produce that evidence,
or show some sufficient reason for not doing it, the failure
must be attributed to its own neglect, against which no relief
can be had; but, aside from this view, appellant was not
injured by the production of the testimony, for, had the $500
been allowed as an advance for future work, the judgment
could still be maintained, if the jury gave credence to the
other testimony offered by appellee.

Again, it is charged, on the previous trial, appellee claimed
for only 1500 cubic yards of excavation, for removing hay,
and for a bridge foundation.   A bill of particulars was on
file, which afforded notice appellee, in addition to those items,
claimed for 2500 yards of excavation on the McKindly farm,
at the other cut, and the company can not be heard to say it
was surprised that evidence was offered to sustain the demand.
Ample opportunity was thus given to procure the evidence
that, on a previous trial, appellee had not insisted upon so
large a demand as now claimed, but no effort was made to do
so.   The evidence, if produced, was not of a high grade, nor
of a conclusive character.   At most, it would only tend to
impeach the testimony of appellee, and it is seldom, if ever,
a case is opened to let in that kind of testimony.

It is not necessary we should remark upon the evidence or
state any account between the parties.   The testimony, in our
opinion, fully sustains the verdict.   It was contradictory in
the extreme, but it was the province of the jury to weigh
and consider all the evidence, and give it, and each part of
it, such weight as they may believe it entitled to receive.
This they have done, and we can see no reason to be dissatis-
fied with the conclusion reached.   Upon the principal points
relied on for a reversal of the judgment, the case of *The*

*Chicago and Great Eastern Railway Co.* v. *Vosburgh*, 45 Ill. 311, is an authority exactly in point, and is conclusive of the case.

Perceiving no material error in the record, the judgment must be affirmed.

*Judgment affirmed.*